## WILL OF LEITSCH.

*November 14—December 9, 1924.*

*Wills: Trust estates: Income intermediate death of testator and vesting of estate: Property of life tenant: Conversion of profitable holdings into trust investments: When excused.*

1. Income accruing from a trust estate intermediate the death of the testator and the vesting of the estate in the trustees belongs to the life tenant and not to the *corpus* of the estate, especially when no other disposition of such income is made by testator. *Estate of Lyons,* 183 Wis. 276, overruled.   p. 262.
2. The fact that the retention of stock in a prosperous manufacturing company by the testamentary trustee would be presently advantageous to the life tenants does not authorize such retention, rather than a sale and reinvestment in securities

prescribed by sec. 2100$b$, Stats., the purpose of the law being to protect the interests of the remaindermen as well as those of the life tenants.   p. 264.

3. Stocks in manufacturing concerns are not recognized by sec. 2100$b$, Stats., nor by the common law, as proper investments for trust funds.   p. 264.

4. Where all of testator's personalty, or the residue thereof after payment of debts, etc., is bequeathed for the life of the legatee, with remainder to others, the whole property must be converted into money and invested in permanent securities by the executor and the income only paid to the life tenant, unless the will indicates the intent of the testator that the legatee enjoy the property in its then condition.   p. 264.

5. The fact that testator invested in the stock of a business which he built up and made profitable will not authorize the testamentary trustee to continue such investments beyond a reasonable time for conversion and reinvestment in securities prescribed by law (sec. 2100$b$, Stats.), in the absence of directions in the will.   p. 265.

6. Nor does the fact that the will expressly directed conversion of the realty but not of the personalty indicate that the stock should be retained by the trustee, as the direction to convert the real estate, if not necessary, was appropriate, but as to the conversion of securities the direction was wholly unnecessary; and the direction to sell real estate negatives an intent to pass the estate *in specie* to the trustee.   p. 266.

APPEAL from a judgment of the county court of Columbia county: A. F. KELLOGG, Judge.   *Reversed in part; affirmed in part.*

The will of W. C. Leitsch was duly admitted to probate by the county court of Columbia county.   After making certain specific bequests the will then provided:

"6th. Of the remainder of my estate I give and bequeath to my wife, Adelaide, the use and income of one third thereof as long as she lives—with this provision . . . . The use and income of one third thereof I give to my brother, Robert, as long as he shall live.   The use and income of one sixth thereof I give to my brother, Rudolph, as long as he shall live.   The use and income of one sixth thereof I give to my sister, *Minna Lange,* as long as she shall live."

"9th. I direct that part of my estate from which the incomes are to be paid to my wife, my brothers, and my sister

shall be held in trust.   At the death of either or any of them the incomes of their share shall be paid to the others in proportion to the original gifts or legacy."

All the rest, residue, and remainder of his estate he gave in equal shares to his nephews and nieces living at the time of his death.   *F. A. Chadbourn* of Columbus was appointed executor and trustee of the will.

*Robert C. Leitsch,* one of the life beneficiaries named in paragraph 6 of the will, petitioned the court for an order directing the executor to pay the life beneficiaries the income accruing from the estate from and after the date of testator's death.   The executor also petitioned the court for a construction of the will in various particulars, and especially with respect to the power and duty of the trustee to sell or retain 1,500 shares of the stock of the Columbus Canning Company.   The court denied the petition of *Robert C. Leitsch* and held that the life beneficiaries "are entitled to the use and income of the trust estate as of the time that said estate is assigned to the trustee named in the will and not as of the date of death of said W. C. Leitsch;" and "that there is nothing in said will which authorizes and permits the executor and trustee named to retain securities left by said deceased as an investment unless said securities conform with the laws of the state of Wisconsin relating to trust investments."   *Robert C. Leitsch, Rudolph Leitsch,* and *Minna Lange* appeal from such judgment.

For the appellants there were briefs by *Grady, Farnsworth & Walker* of Portage, and oral argument by *Daniel H. Grady.*

*Herbert L. Zeidler* of Columbus, for the executor.

*H. E. Andrews* of Portage, as guardian *ad litem.*

A brief was also filed by *Miller, Mack & Fairchild* of Milwaukee as *amicus curiæ.*

OWEN, J.   The first question which we shall consider is whether the life beneficiaries are entitled to the income

arising from the trust estate from the time of the death of the testator, as they claim, or from the time that said estate was assigned to the trustee, as held by the county court. In 40 Cyc. 1882, the rule is stated as follows:

"It is settled by the great weight of authority that in the case of a bequest of a life estate in a residuary fund, or of some aliquot part thereof, if no time is prescribed in the will for the commencement of the interest or the enjoyment of the use or income of such residue, the legatee for life is entitled to the interest or income of the clear residue, as afterward ascertained, to be computed from the time of the death of the testator."

In 28 Ruling Case Law, 355, the rule is stated in this language:

"So where there is the bequest of the whole or of an aliquot part of the residue of an estate to a legatee for life, remainder over, and no time is fixed by the will for the commencement of such life use, the legatee is entitled to the use or income of the clear residue so bequeathed, as the same may be at last ascertained, to be computed from the death of the testator."

In 3 Woerner, American Law of Administration (3d ed.) 1573, the rule is thus stated:

"But where the residuum, or the interest thereon, is given for life to one, remainder to another, and no time is mentioned for the beginning of the interest or enjoyment, the legatee for life is entitled to interest from the testator's death, although not ascertainable until a subsequent time."

And in 2 Perry on Trusts (6th ed.) § 550, note (a), it is said:

"The general rule is now well established that when property is devised or bequeathed in trust to pay the income to a person for life or for a limited time, he is entitled to either actual or equitable income from the date of the testator's death, unless the testator has indicated an intention that the enjoyment of income shall not begin until some later date."

Will of Leitsch, 185 Wis. 257.

Ample authority is cited to support these texts. A review thereof seems unnecessary, as an extensive examination leads us to the conclusion that the rule thus stated is supported by well-nigh universal authority. The reason for this rule is frequently declared to be that the life tenant ranks first in the consideration of the testator, and a contrary construction would take from the life tenant a portion of the income, add it to the *corpus,* and thus at the expense of the life tenant swell the estate of the remainderman, who, presumably, stands second to the life tenant in the consideration of the testator. This is especially true where no other disposition is made of the income arising from the *corpus* of the estate subsequent to the death of the testator. This rule has also been followed and applied by this court in *State v. Pabst,* 139 Wis. 561, 121 N. W. 351; *Will of Gehring,* 179 Wis. 589, 192 N. W. 36; *Will of Barron,* 163 Wis. 275, 155 N. W. 1087.

The county judge recognized this rule as the one supported by the great weight of authority, but thought that a different rule had been laid down by this court in *Estate of Lyons,* 183 Wis. 276, 197 N. W. 710. In that case, after certain specific bequests, the testator devised and bequeathed to trustees the remainder of his estate, "to hold, manage, and invest the same," etc., and to "pay over the net income to my wife, Mary Lyons, during her life; and if in their discretion a greater sum than the net income should be deemed necessary or desirable for her comfort and enjoyment, then to pay her such further sum or sums from the capital of my estate as they may deem necessary or desirable for the purpose." It was there held that the income accruing from the trust estate intermediate the death of the testator and the vesting thereof in the trustees belonged to *corpus* and not to the life tenant. It was thought that such an intention on the part of the testator was to be read out of the will because of the provision therein that the income was to be paid by

the trustees, and that the income to which the widow was entitled did not begin to accrue until the estate was assigned to the trustees.

It must be conceded that the county judge was justified in the view he took of the *Lyons Case*. That case, however, cannot be reconciled with the great weight of authority. It should not stand as the law of this state. To construe the language there employed as indicating an intent on the part of the testator to postpone the income of the life tenant is in effect to deny the general rule, as similar language will be found in most trusts. Of course all authorities agree that the testator may fix another date than that of his death as the date from which the income shall accrue. But, upon reflection, it becomes plain that the language used in the *Lyons Case* should not have been so construed. Similar and even much stronger language used under more compelling circumstances has been construed as entitling the life tenant to the income from the time of the death of the testator, as reference to the following authorities will abundantly show: *Cooke v. Meeker*, 36 N. Y. 15; *Matter of Stanfield*, 135 N. Y. 292, 31 N. E. 1013; *Lovering v. Minot*, 9 Cush. (Mass.) 151; *In re Brown's Estate*, 190 Pa. St. 464, 42 Atl. 890; *Bancroft v. Security Co.* 74 Conn. 218, 50 Atl. 735; *Lawrence v. Littlefield*, 215 N. Y. 561, 109 N. E. 611; *Edwards v. Edwards*, 183 Mass. 581, 67 N. E. 658; *Wethered v. Safe Deposit & T. Co.* 79 Md. 153, 28 Atl. 812; *Abell v. Abell*, 75 Md. 44, 23 Atl. 71, 25 Atl. 389; *Cushing v. Burrell*, 137 Mass. 21; *Lawrence v. Security Co.* 56 Conn. 423, 15 Atl. 406; *Bartlett v. Slater*, 53 Conn. 102, 22 Atl. 678, 55 Am. Rep. 73, 74; *Matter of Benson*, 96 N. Y. 499; *Sargent v. Sargent*, 103 Mass. 297; *Pollock v. Learned*, 102 Mass. 49, 55.

That the court erred in its statement of the law in the *Lyons Case* is conceded. It may be noted, however, although not put forward as an excuse, that the authorities establishing the general rule were not cited to the attention of the

court in the briefs of counsel in the *Lyons Case*. This but emphasizes the fact that the office of attorney is an important one in the administration of justice, and that his responsibility in procuring judicial enunciation of correct·rules of law is not to be minimized.

It is urged by counsel that the *Lyons Case* may be distinguished owing to the peculiar circumstances of that case. We fully agree that there were circumstances in that case which justified the judgment of this court as a matter of Solomonic justice. However, there is language used in the opinion in that case which will stand as a discordant note in the jurisprudence of this state, and, feeling that its withdrawal will conduce to a clarification of the law, we embrace this early opportunity for its elimination. While the error of the county court in limiting the income of the life tenant as of the time that said estate is assigned to the trustee was quite natural in view of the *Lyons Case,* the judgment in this respect must nevertheless be reversed with instructions to grant the petition of *Robert C. Leitsch.*

We next come to the consideration of that part of the judgment reading as follows:

"That there is nothing in said will which authorizes and permits the executor and trustee named to retain securities left by said deceased as an investment unless said securities conform with the laws of the state of Wisconsin relating to trust investments."

It appears that the testator during his lifetime was the founder and general manager of the Columbus Canning Company, which, under his management, proved to be a most profitable business and paid large dividends. A portion of his estate consists of 1,500 shares of the stock of this concern, appraised at $135,000. It is the desire of the life tenants that the trustee be permitted to retain this stock and that he be not required to sell the same and reinvest the proceeds in other securities.

While it is probable that the retention of this stock by the

trustee would presently result to the advantage of the life tenants, it is the purpose of the law to protect the interest of the remainderman as well as that of the life tenant. It is well known that stocks in manufacturing concerns are not regarded as proper investments for trust funds. They are not so recognized by sec. 2100*b*, Stats., prescribing the securities in which trust funds may be invested, nor were they so regarded by the common law. "In England, trustees cannot invest the trust fund in the stock or shares of any bank or private or trading corporation; for the capital depends upon the management of the directors, and is subject to losses." 1 Perry, Trusts (6th ed.) § 455. The rule on this subject was very distinctly stated by this court in *Golder v. Littlejohn,* 30 Wis. 344, at p. 351, as follows:

"The general rule is, that where there is a bequest of the whole of the testator's personal estate, or of the residue thereof after the payment of debts, expenses of administration and legacies, to one person for life, with the remainder to others after the termination of the life estate, the whole property must be converted into money, and invested in permanent securities, by the executor, and the income only paid to the legatee for life. But if it can be gathered from the will that the testator intended that such legatee for life should enjoy the property in its then condition, the bequest is specific, and the legatee is entitled to the possession and enjoyment of the property thus specifically bequeathed, although the bequest be made in general terms, and without any particular designation of the property. The authorities, both in England and this country, which assert this doctrine, are very numerous, and the law as here stated is well settled."

In that case it was held to have been the duty of the executor of the estate to sell certain railroad stocks which were bequeathed to remaindermen and income therefrom to life tenants.

In 1 Perry, Trusts (6th ed.) § 465, it is said:

"If no directions are given in a will as to the conversion and investment of the trust property, trustees to be safe

should take care to invest the property in the securities pointed out by the law. It is true that a testator during his life may deal with his property according to his pleasure, and investments made by him are some evidence that he had confidence in that class of investments; but, in the absence of directions in the will, it is more reasonable to suppose that a testator intended that his trustees should act according to law. Consequently, in states where the investments which trustees may make are pointed out by law, the fact that the testator has invested his property in certain stocks, or loaned it on personal security, will not authorize trustees to continue such investments beyond a reasonable time for conversion and investment in regular securities."

Counsel for appellants concede this to be the law, but they contend that it is apparent from the terms of the will that the testator intended that the stock in the Columbus Canning Company should be held by his trustee. They point to the fact that this business was built up by his own genius and made to pay large returns, and it seems unreasonable that the testator, who was thoroughly familiar with this company, its holdings and earning power, should intend or desire that stock which had been and was paying such enormous dividends, and which he had selected and retained as an investment for over twenty years, should be converted into four or five per cent. interest-bearing securities of the character described in sec. 2100$b$, Stats. They say it is also significant that the testator expressly directed a conversion of his real estate but not of his personal property. Reliance is also placed upon that portion of the will which says: "I direct that part of my estate from which the incomes are to be paid . . . be held in trust."

With reference to these contentions, we may say that the argument could always be made that the testator was satisfied with securities which he had personally selected during his lifetime and in which he had personally invested his money, and that because the investments left by him conformed to his own judgment it is to be presumed that he intended their continuance. As has already been seen, how-

ever, such is not the law. The testator had a right to speculate with his money during his lifetime, but upon his death, when his securities become the subject of a trust fund, the law exercises a supervision over them for the benefit of both remainderman and life tenant. It may be remarked that the testator might have had the utmost confidence in these stocks while the corporation was under his management and control. It does not follow that he would have had the same confidence when the control and management thereof passed to others.

So far as the argument arising from the fact that testator expressly directed a conversion of his real estate but not of his personal property is concerned, it may be remarked that there is a great difference between the authority of the trustees in dealing with real estate and investment securities. The direction to the trustees to convert the real estate, if not necessary, was quite appropriate for that purpose. 2 Perry, Trusts (6th ed.) ch. 25. As we have already seen, such direction was wholly unnecessary with reference to a conversion of the securities. To attach any potency to the words "I direct that part of my estate from which the incomes are to be paid . . . be held in trust," it would have to appear from the entire will that it was the intention of the testator to pass his estate to the trustee *in specie,* but the direction to sell the real estate wholly negatives such an intent on the part of the testator.

*In re Allis's Estate,* 123 Wis. 223, 101 N. W. 365, is relied upon by the appellants. A reading of that case, however, will indicate a clear intention on the part of the testator to permit his trustees to retain his investments. It is clear that where such appears from the terms of the will, the trustees are protected in carrying the investments coming into their hands. No such intention, however, can be spelled out of the terms of the will under consideration, and it follows that this part of the judgment should be affirmed.

*By the Court.*—That portion of the judgment which with-

holds from the life tenant income arising intermediate the death of the testator and the vesting of the trust fund in the trustee, is reversed, with directions to enter judgment in accordance with this opinion. That part of the judgment which requires a conversion of the stock of the Columbus Canning Company and a reinvestment of the proceeds thereof, is affirmed.